## CHURCHILL LINE v. GULF NAVAL STORES SUPPLY CO.

### THE ARIADNE IRENE.

(District Court, E. D. Louisiana, New Orleans Division. January 5, 1926.)

No. 16567.

1. Contracts ⟨⟩ 10(3)—Contract of affreightment held not wanting in mutuality, because of clause allowing abandonment of voyage when war or hostilities make it unsafe or imprudent to sail.

Contract of affreightment *held* not void for want of mutuality, because of clause allowing abandonment of voyage when war or hostilities, actual or threatened, make it unsafe or imprudent to sail; such clause not making service depend on master's or owner's independent will.

2. Shipping ⟨⟩ 108.

Shipowner may sue shipper for breach of contract of affreightment by refusal to use space reserved.

In Admiralty. Libel by the Churchill Line against the Gulf Naval Stores Supply Company. Decree for libelant.

Terriberry, Rice & Young, of New Orleans, La., for libelant.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, La., for respondent.

BURNS, District Judge. Libelant's claim is for damages for breach of a contract of affreightment in the sum of $262.50, being the difference in the contract rate and the rate prevailing at the date of sailing, or 17½ cents per 100 pounds on 300 barrels of rosin, of 500 pounds each.

The defendant Gulf Naval Stores Supply Company, on September 20, 1920, contracted for cargo space for an October shipment of 300 barrels of rosin from Savannah, Ga., to Liverpool, England. On September 20, 1920, they attempted to cancel the contract for the then-stated reason that "our sale covering this transaction has been canceled by our customer, and we will be unable at the present writing to use the space."

On September 24, 1920, libelant's agent promptly notified defendant that the steamship Ariadne Irene would lift the shipment, that the rates were declining, and that damages would be claimed for the breach. On October 31, 1920, libelant notified respondent that the vessel had arrived in Savannah that day, and would load cargo the next morning, thus offering performance.

The evidence shows by a fair preponderance that the libelant was able, ready, and willing to perform; that it made due effort

to relet the cargo space and minimize the damage; that the term "October shipment," in the contract, contemplated, according to trade custom obtaining at the port of Savannah, and perhaps generally, the arrival of the ship in port, ready to receive cargo, any time in October. Bills of lading could have been issued on that day, even though the goods were not actually loaded that day; that the amount claimed is a fair measure of the damage sustained by the breach.

[1] Defendant now contends that the contract was void for want of mutuality. This clause reads as follows:

"This contract is made subject to war clauses, and is further conditional upon the continuance of the steamship company's service and the sailing of its steamers, and if at any time in the judgment of the steamship company conditions of war or hostilities, actual or threatened, are such as to make it unsafe or imprudent for its vessels to sail, the sailing of any vessel or vessels may be postponed or canceled, and in that event the steamship company may, at its option, cancel this contract and shall be relieved thereafter from any liability hereunder, except to return to the shippers whatever cargo may have been already received under this contract.

"War Clauses.

"Owing to conditions of war or hostilities existing or threatened, this shipment is accepted at the sole risk of the owners thereof of arrest, restraint, capture, seizure, detention, or interference of any sort by any power, and the carrier and its representatives are privileged, in its or their absolute discretion, if deemed advisable for the protection of the vessel or any cargo, or to avoid loss, damage, delay, expense, or other disadvantage or danger, either with or without proceeding to or toward the port of discharge, or entering or attempting to enter or discharge the goods there, and whether such entry or discharge be permitted or not, to proceed to any other port or ports, or return to the port of shipment, once or oftener in any order or rotation, retaining the goods on board or discharging the same

at risk and expense of the owners thereof at any such port or ports at the first or any subsequent call, and full bill of lading freight, together with extra compensation for additional transportation and all other charges shall be paid by shipper, consignee and/or assigns and shall be a lien on the goods.

"If, and so long as, the ship is insured against war risks, with a war risk insurance association, under or in connection with a war risk insurance scheme of his Britannic majesty's government, the ship, in addition to any liberties expressed or implied in bills of lading, shall have liberty to comply with any orders or directions as to departure, arrival, routes, ports of call, stoppages, or otherwise, howsoever given by his Britannic majesty or his Britannic majesty's government, or of any department thereof, or by any committee or person having, under the terms of the war risks insurance on the ship, the right to give such orders or directions, and nothing done or not done by reason of any such orders or directions shall be deemed a deviation.

"It is agreed that all differences or disputes which may arise under this contract shall be settled by arbitration, as provided for by the charter, by-laws, and rules of the Savannah Cotton Exchange."

Clearly this clause, allowing the voyage to be abandoned whenever "war or hostilities, actual or threatened, are such as to make it unsafe or imprudent for its vessel to sail," etc., did not make the service depend on the independent will of the master or owner of the vessel. Such clauses were generally used in such contracts of necessity during the war period and are, in essence, no different from the clauses usual in contracts of carriage providing against such contingencies as strikes, lockouts, acts of the enemy, etc.

[2] That a shipowner has a right to claim damages for such breach and maintain his action for nonperformance by a shipper, who has engaged to ship goods and reserved space therefor, does not seem open to question.

There will be a decree for libelant. Costs to follow decree.